UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| | | |
|---|---|---|
| **ELIZABETH L. PERRIS**<br>CHIEF BANKRUPTCY JUDGE | 1001 S.W. FIFTH AVENUE, # 700<br>PORTLAND, OREGON 97204<br>(503) 326-1536 | DIANE K. BRIDGE, LAW CLERK<br>STEPHEN A. RAHER, LAW CLERK |

**VIA ECF**

April 14, 2010

Miles D. Monson
Anderson & Monson, P.C.
10700 SW Bearverton-Hillsdale Hwy.
Beaverton, OR  97005

Michael D. O'Brien
Oliveros & O'Brien, P.C.
9200 SE Sunnybrook Blvd., Suite 150
Clackamas, OR  97015

    Re:  <u>Fidel Hernandez-Perez and Rebecca Hernandez</u>,
           Case No. 08-33302-elp13
           Objection to Claim of Kopp Construction Co.

Dear Counsel:

    The purpose of this letter is to give you my ruling on debtors' objection to the claim filed by Kopp Construction ("Kopp").  After hearing the evidence and considering the exhibits and argument of counsel, I conclude that Kopp's claim will be allowed as a secured claim in the amount of $77,880.88.

    The background facts are not in dispute and will not be set out in detail here.  Debtors entered into a written contract with Kopp to construct an addition to their house, which would double the size of their home.  The contract price was $121,261.  Over the course of construction, Kopp billed debtors for extras over and above the contract price.  Debtors paid Kopp $116,235 on what ultimately turned out to be an approximately $204,000 bill.

    Kopp filed a proof of claim for $88,078.88, which it claims is secured by a construction lien on the home.  Debtors objected, asserting that the secured claim should be $23,500.  During the hearing on the objection to claim, debtors revised the amount of the undisputed secured claim to $50,627.30.  Also during the course of the hearing, Kopp conceded some previously disputed charges, resulting in a request for allowance of $85,448.88 as a secured claim.  This leaves a dispute over $34,821.58.

The disputed items are charges for which either there is no written change order signed by debtors, or no written change order at all. The construction contract provides that, if the owners make changes to the plans during the course of construction that result "in an increase in the scope of work," the owner must pay an additional fee, and "must send [a] signed Change Order form to contractor describing work to be done prior to changed work being started." Contract, Article Five. Article Ten of the contract provides that the owner cannot change or eliminate any of the work provided for in the contract without written notification to the contractor, and that all changes or additions must be reduced to writing and signed by the parties. This same article further provides, however:

> CONTRACTOR shall not be required to perform any work or provide any materials, which have not been agreed upon in writing. <u>Verbal changes from CONTRACTOR to OWNER and/or OWNER to CONTRACTOR are acceptable</u>. Owner must send signed change order and description of work to be completed prior to work being started.

Debtors argue that these contract provisions mean they are not obligated to pay for any charges that are not supported by a written, signed change order. They further argue that any charges not supported by a written, signed change order are not subject to the contractor's lien.

The contract clearly says that verbal changes are acceptable. I interpret the contract to mean that the contractor is not required to begin work that is outside the scope of the contract without a written, signed change order, but the contractor may choose to do so pursuant to a verbal change order.

The course of conduct of the parties confirms that they were operating under the understanding that a written, signed change order was not required. During the course of construction, debtors paid for additions to the contract price that were not supported by signed written change orders. Further, they do not dispute that they are liable for a number of changes that are not supported by signed, written change orders.

Debtors argue that Kopp's lien does not include the charges for items not supported by signed written change orders, because a contractor cannot claim a lien for work that is not supported by a written contract. ORS 87.070 provides that a contractor "may recover, upon a lien perfected by the contractor, only the

amount due to the contractor according to the terms of the contract[.]"  ORS 701.305(1) requires a written contract for construction work on a residential property if the contract price exceeds $2,000.

In this case, there is a written contract.  That contract allows for additional charges incurred pursuant to either written or verbal changes.  I conclude that Kopp's lien is based on the written contract for construction, and includes charges allowed under the contract as a result of either written or verbal changes.

Debtors dispute a number of specific charges.  I will allow charges that are supported by evidence that (1) either the work was not included in the original contract or, for reasons that could not have been reasonably anticipated, the cost of an item exceeded the amount listed in the cost breakdown; (2) is supported by evidence of the cost of the additional charges; and (3) debtors either agreed to or acquiesced in.  I reject debtors' argument that they are not liable for payment of charges for changes made because Kopp did not specifically discuss the cost of each change with them.  Debtors do not dispute their liability to pay for various changes they made, including, for example, adding an air conditioner and installing new siding on the front of the house, even though they did not discuss with Kopp the details of the cost of those changes.  Debtors knew that changes they made over and above the work included in the bid would result in additional charges.  Debtors could have requested specific bids before the additional work was done, but they did not do that.

I will discuss the individual disputed charges below, in the order they are identified in the invoices that are Exhibit I.

1. <u>Exhibit I Page 2</u>

   <u>Exterior Doors</u> - $334

   The original bid included $845 for exterior doors.  The cost to Kopp of two exterior doors was $1,112, a difference of $267.  Exh. O, Page 3.  Mr. Kopp testified that debtors requested a change in the exterior doors from those in the original bid.  It appears that the change requested by debtors resulted in costs above those anticipated in the original contract.  Debtors are liable for the additional costs caused by their requested changes.  They are also liable for the 25 percent mark-up on the

Miles D. Monson
Michael D. O'Brien
April 14, 2010
Page 4

doors, which is in the range of 20 to 30 percent mark-up provided in the contract.

This charge will be allowed.

Excavation - $1,800

The original contract included a bid of $3,000 for excavation. Exh. E. The Description of Materials & Specifications says that "Dirt removal from job site is an additional cost and will be billed as an extra for time and material . . . plus dump fee[.]" Exh. G, Page 1. Both Mr. Kopp and Mr. Ellwood testified that this additional excavation charge was necessitated by debtors' request to enlarge the patio beyond the original contract, which they referred to as the "upper patio." I interpret the testimony to be that the additional cost was for the upper patio as well as the extended sidewalk. Debtors concede, and paid for, $2,334 in additional excavation. See Exh. I, Page 1.

The contract requires debtors to pay for additional excavation. In light of their change to the plans to add the upper patio and the sidewalk from the patio to the garage, which necessitated further excavation, this excavation charge will be allowed.

Masonry - raised chimney - $1,893

The original bid did not include any line-item for raising or repairing the chimney. Mr. Kopp testified that this charge was for raising the chimney four feet to accommodate the new rooftop, as well as to repair crumbling masonry in the existing chimney. Mr. Ellwood testified that the chimney had to be raised to meet the building code.

The backup documentation for this charge, Exhibit O, Page 2, does not include any repair, only extending the chimney. I conclude that the chimney extension to meet code was not requested nor changed by debtors, but was something that should have been anticipated and included in the original bid.

This charge will be disallowed.

Miles D. Monson
Michael D. O'Brien
April 14, 2010
Page 5

2. <u>Exhibit I Page 3</u>

<u>New Driveway</u> - $4,960

The original contract did not include replacing debtors' driveway, which was cracked before construction began. During the course of construction, the subcontractor who provided the trusses for the project required debtors to sign a release for any damage to their driveway resulting from parking the subcontractor's truck on the driveway. The driveway was further damaged by the subcontractor's truck.

Kopp replaced the damaged driveway with a new, widened driveway. Debtors say that they did not agree to pay to have their driveway replaced. Mr. Kopp and Mr. Ellwood both testified that debtors asked them to replace and widen the damaged driveway.

I conclude that debtors requested Kopp to replace the driveway. If they had not made such a request, it is logical that they would have stopped Kopp when he began to demolish the old driveway. Further, debtors had requested other changes to the original contract and had paid the additional costs resulting from the changes. Therefore, they knew when the driveway was replaced that they would incur additional charges for that work.

This item will be allowed.

<u>Dump Fees</u> (3 combined) - $633

Mr. Kopp testified that these three charges were for hauling off the old roofing materials from the front of the house. At the hearing, Kopp conceded that the roofing was included in the original contract and should not have been an additional charge. Dumping the materials for the roofing job should have been included in the original contract price.

These three items will be disallowed.

<u>Framing Labor</u> - $3,930

Mr. Kopp testified that this charge was for framing required when debtors asked him to remove the post in the kitchen and replace it with a beam, as well as for repairing dry rot in the children's bedroom. Mr. Ellwood's testimony confirmed the basis

Miles D. Monson
Michael D. O'Brien
April 14, 2010
Page 6

of this charge. The original contract did not include either removing the post in the kitchen or repairing dry rot.

This charge will be allowed, as it was additional work debtors requested that was outside the scope of the original contract.

3. <u>Exhibit I Page 5</u>

<u>Framing Material</u> - $631

This charge was for materials needed to reframe the gable ends of the existing house, including moving studs. These costs were necessitated by debtors' change in the location of the air conditioning. Debtors requested the change in the location of the air conditioning.

This charge will be allowed.

<u>Rough Heating</u> - $7,428

Debtors do not dispute $5,500 of this charge, which includes the cost of an air conditioner that was not in the original bid. They agree that they asked for the air conditioner, but argue that $5,500 would be a reasonable cost.

Mr. Kopp testified that this charge includes more than the air conditioner. According to Kopp's explanation based on Exhibit T, page 2, the $7,428 includes the following components:

| | |
|---|---:|
| Air conditioner | $3,248 |
| Gas line to kitchen range | 250 |
| Gas line to water heater | 250 |
| Remove supply duct & relocate | 450 |
| New base can | 630 |
| Move air conditioner from patio | 250 |

It also includes labor of $1,112 to cut and demo the concrete for the new water heater and gas line. Those items add up to $6,190. With a 20 percent mark-up, the charge is $7,428.

Debtors requested that Kopp install the air conditioner, which was not in the original bid. Therefore, the costs related to the air conditioner will be allowed. Debtors also requested that the air conditioner be moved from its planned location on the patio to the side of the building, and that the furnace be

Miles D. Monson
Michael D. O'Brien
April 14, 2010
Page 7

relocated. They also requested the Rinnai water heater, which was different from what was in the original bid. Installation of the kitchen appliances was not in the original bid, but Kopp was asked to install those appliances. All of the charges that make up the $7,428 relate to those items, all of which debtor requested. There is no indication that the charges are unreasonable.

This charge will be allowed.

Dump Fees (4 combined) - $720

Mr. Kopp testified that these dump fees were to haul away concrete. Mr. Ellwood testified that the fees were to haul off extra material such as shingles, bad dry rotted lumber, sheet rock, and old siding.

It is impossible to tell which of these materials were related to work contemplated in the original contract and which were related to additional work requested by debtors. Because I cannot tell whether some or all of the dump fees are for disposing of materials that should have been included in the original bid, I will disallow this $720 item.

Demo Labor - $1,219

Mr. Kopp testified that this charge was related to the repair of the sagging garage door, including removing the old header. Debtors do not dispute that Kopp's claim includes the $650 charged for repairing the sagging garage door, which is a listed charge on Exhibit I, page 5. The charge for the demo labor is in addition to the $650 charge that debtors agree to pay.

I am unable to determine what amount if any is properly chargeable for demo labor related to the sagging garage door. The documentation supposedly supporting this line item is Exhibit Q, page 6. That page is an invoice from the subcontractor, NewStart General Maintenance LLC, showing charges for labor for a number of different items. The total charges on that page are $1,237.50, and apparently include work on parts of the project that were included in the original contract. Mr. Kopp broke out charges for "Demo," "Labor," and an unidentified $150 as resulting in additional charges. The "Demo" portion shows $937.50 plus a 30 percent mark-up, for the total of $1,219 charged to debtors.

Miles D. Monson
Michael D. O'Brien
April 14, 2010
Page 8

I cannot determine where the $937.50 came from, and so cannot determine whether the work charged was part of the original contract or for additional work requested by debtors. The cost for the line items marked "Extra" in the subcontractor's invoice totals $350. But those items refer to framing a floor, a wall, and doors and trim, garage door fix. None of that explains where the $937.50 came from or even shows that a portion of the charge should be allowed as an extra.

This item will be disallowed.

<u>Framing Labor</u> - $878

This line item suffers from the same lack of proof as does the "demo labor" item discussed above. For the same reason, this item will be disallowed.

<u>Rough Plumbing</u> - $2,352

This line item says "Rough Plumbing over bid because of relocation." Exh. I, Page 5. The original bid included $3,800 for plumbing; the charge from the subcontractor was $5,670. Kopp charged a 20 percent mark-up for the amount that was more than $3,800.

Mr. Kopp testified that the increased cost for rough plumbing was a result of debtors changing their mind about the type of bathtub they wanted in the new bathroom, which meant that Kopp had to move the plumbing that had been roughed-in according to the original plans. Debtors also had Kopp replumb the entire kitchen, which was not in the original bid.

Mr. Ellwood explained that they had plumbed according to the original plans, then debtors decided they wanted a bigger tub, which meant all of the bathroom fixtures had to be moved. This required re-doing all of the plumbing.

I conclude that debtors' request for a significant change in the size of the bathtub, which required that the other bathroom fixtures be moved to accommodate the new tub, caused additional work that was not anticipated in the original contract. This is a proper additional charge.

This item will be allowed.

Case 08-33302-tmb13    Doc 71    Filed 04/14/10

Miles D. Monson
Michael D. O'Brien
April 14, 2010
Page 9

  <u>Siding - $4,440</u>

  This charge is for the work done to re-side the existing portion of the house. The original contract called for putting siding on the addition and tying it into the siding on the existing part of the house. Debtors changed their minds and decided to put new siding on the entire structure, resulting in additional work. They agree that they wanted the additional siding done and are willing to pay, but say that the charge should be $2,000, not $4,440. Their reasoning is that the cost of siding the existing part of the house should be less than they were charged for siding the addition (which was in the original contract), because the existing portion of the house is smaller than the addition.

  The original contract called for siding the addition only. The cost break-down was $3,000 for labor and $4,500 for materials, for a total of $7,500. According to my calculations based on the plans, Exhibit C, page 3, the outer walls of the addition are approximately 133 feet, while the outer walls of the remaining existing house are approximately 114 feet. The charge for the addition came out to $56.39 per foot ($7,500 divided by 133 feet). At that same rate, the charge for the 114 feet of the existing house would have been $6,429. The actual additional charge for $4,440 is reasonable.

  This item will be allowed.

4. <u>Exhibit I Page 6</u>

  <u>Insulation - $567</u>

  Mr. Kopp testified that debtors asked him to remove a post in the kitchen, which meant that they had to take down the existing beam and remove the old kitchen ceiling, which included removing the old insulation. Mr. Ellwood testified that, when they cut into the ceiling to remove the post, they had to also replace the insulation.

  Exhibit R page 1 shows the subcontractor's charge of $475 for attic insulation in the old section of the house that was not in the bid. Kopp's charge of $567 is that cost plus a 19 percent mark-up. Because this work was needed to do the extra work debtors requested in removing the post in their kitchen, it is properly part of the lien.

This item will be allowed.

<u>Dump Fees</u> (2 combined) - $355

Both Mr. Kopp and Mr. Ellwood testified that these dump fees related to removing debris from the additional work on the kitchen ceiling. This is a proper additional charge.

This item will be allowed.

<u>Roofing - moved plumbing</u> - $162

Debtors concede this charge. It will be allowed.

<u>Interior Trim/Doors</u> (combined) - $3,515

This amount is the sum of seven line items, all relating to interior doors and trim. The original contract did not include new doors in the existing portion of the house. Debtors planned to keep their old doors. Mr. Kopp testified that, sometime during the project, debtors decided they wanted all of the interior doors to match, so asked him to replace the existing interior doors with new doors to match those in the addition. Mr. Ellwood testified that he discussed this change with Mrs. Hernandez.

I conclude that this is a change that was requested by debtors and is in addition to the work contemplated in the original contract. Therefore, the charges will be allowed.

However, the documentation for the charges does not quite add up. The back-up documentation is Exhibit R, pages 10-15. There is no documentation to support the charge of $17 for shims. The documentation for the $389 charge for one of the doors supports a charge of $379, not $389. This appears to have been a typo.

These items will be allowed except for the $17 entry. The $389 charge will be allowed at $379, for a total allowed of $3,488.

<u>Hardwood Floors</u> - $705

The original contract provided for new hardwood floors in the library, family room, master bedroom and closet, and for weaving the new hardwood into existing hardwood floors in the

Miles D. Monson
Michael D. O'Brien
April 14, 2010
Page 11

existing portion of the house. The contract included a line item of $9,504 for that work.

According to Mr. Kopp and Mr. Ellwood, when existing walls were moved according to the plans, it was discovered that the existing hardwood floors would not line up with the new hardwood floors in the new addition. Mr. Kopp testified that they were unable to save the floor in the children's bedroom and reuse it, as anticipated by the contract, so they had to replace that floor as well as do extra work to weave the new floor into the old.

There seems to be no dispute that additional work was required once Kopp tore out the old walls and discovered that the floors would not line up as expected. The question is who should pay the cost of that additional work.

The contract provides that the owner will pay additional charges if, during the course of the project, the owner makes a change to the plans or specifications that results in an increase in the scope of work or if there is a delay that results in an increase in the cost of labor and/or materials. Contract, Article Five. It also provides that the owner will pay costs that exceed the amount in the Cost Breakdown. Contract, Article One.

The additional costs with regard to the floor were not caused by any change made by the owner or by a delay that resulted in increased costs. They resulted from a condition that was discovered when work was done that was within the scope of the contract.

I conclude that the additional cost for the hardwood floor was a result of an unanticipated problem that could not reasonably have been discovered until the existing walls were torn out. Because it could not reasonably have been anticipated and included in the original bid, debtors are obligated under the contract to pay the costs related to hardwood floors that exceeded the anticipated cost. Contract, Article One.

The problem is that I cannot determine how Mr. Kopp came up with the additional charge of $705. Exhibit R, Page 16 is the invoice from the floor subcontractor, which shows a total cost (after retaining $2,500 for finish) of $8,570.75. The original cost for hardwood floors included in the contract was $9,504. Mr. Kopp's calculations on Exhibit R, page 16 show a calculation of $9,504 times 20 percent, for what is shown as a total of

$10,209.30. But the original contract price, $9504, plus 20 percent is $11,404.80, not $10,209.30. In addition, it is not clear why debtors should be charged a 20 percent mark-up on the bid that was in the original contract. There are no calculations I can conceive of that would result in an additional $705 to charge for hardwood floors.

Because I cannot determine how the mark-up was calculated, I will allow the actual cost of the floors above the $9,504 bid, without mark-up. The total bill from the subcontractor for hardwood floors was $11,370.75 ($8,570.75 from Exh. R, page 16 and $2,800 from Exh. S, page 1).

I will disallow the hardwood floor line item on this invoice, because the subcontractor's invoice was less than the original bid amount. The additional amount will be allowed in the next invoice, Exhibit I, page 7.

Cabinets - $450

This charge is for a rebate that debtors received from Home Depot for their kitchen cabinets. The original contract did not include installing kitchen cabinets. Debtors purchased the cabinets from Home Depot, and were planning to hang them themselves. They changed their mind and asked Kopp to hang the cabinets for them. When Kopp's employee attempted to hang the cabinets according to Home Depot's plans, he discovered that the cabinets were an inch and a half off in size. He had to resize and rehang them. He negotiated a rebate with Home Depot as compensation for the mistake.

The rebate should have been given to Kopp, because it was Kopp that incurred the additional time and cost of resizing and rehanging the cabinets.

This item will be allowed.

5. Exhibit I Page 7

Clean Up - $140

Mr. Ellwood testified that this expense was for cleaning up and disposing of the boxes that the kitchen cabinets came in. Because installation of the kitchen cabinets was additional work that debtors asked Kopp to do for them, they should pay for the cost of cleaning up the cabinet boxes.

Miles D. Monson
Michael D. O'Brien
April 14, 2010
Page 13

    This item will be allowed.

<u>Hardwood Floors</u> - $3,360

    This charge for hardwood floors is in addition to the $705 that was charged in the previous invoice. As discussed above, the total subcontractor's charge for the hardwood floors was $11,370.75. I will allow $1,866.75, rounded up to $1,867, which is the difference between $11,370.75 and the original bid of $9,504. I will not allow anything for mark-up, because the evidence does not contain an adequate explanation of how the mark-up was calculated.

    I will allow $1,867 for this item.

<u>Set Bifold Doors & Misc.</u> - $2,100

    This line item covers 42 hours of Mr. Ellwood's time in installing appliances, setting a bifold door, enlarging the holes in the vanities purchased from Home Depot to fit the non-standard fixtures debtors had purchased, and other miscellaneous items. These items were not in the original contract, as they dealt with work that debtors asked Kopp to do in addition to the original contract work.

    This item will be allowed.

CONCLUSION

    Based on my explanation above, the disputed items will be disallowed in the following amounts:

| EXHIBIT I PAGE 2 | | |
|---|---|---|
| **Description** | **Amount Claimed** | **Amount Disallowed** |
| Exterior Doors | $ 334 | $ 0 |
| Excavation | $1,800 | $ 0 |
| Masonry - raised chimney | $1,893 | $1,893 |

| EXHIBIT I PAGE 3 | | |
|---|---|---|
| **Description** | **Amount Claimed** | **Amount Disallowed** |
| New driveway | $4,960 | $    0 |
| Dump Fees (3 combined) | $  633 | $  633 |
| Framing Labor | $3,930 | $    0 |

| EXHIBIT I PAGE 5 | | |
|---|---|---|
| **Description** | **Amount Claimed** | **Amount Disallowed** |
| Framing Material | $  631 | $    0 |
| Rough Heating | $7,428 ($5,500 not disputed) | $    0 |
| Dump Fees (4 combined) | $  720 | $  720 |
| Demo Labor | $1,219 | $1,219 |
| Framing Labor | $  878 | $  878 |
| Rough Plumbing | $2,352 | $    0 |
| Siding | $4,440 ($2,000 not disputed) | $    0 |

| EXHIBIT I PAGE 6 | | |
|---|---|---|
| **Description** | **Amount Claimed** | **Amount Disallowed** |
| Insulation | $  567 | $    0 |
| Dump Fees (2 combined) | $  355 | $    0 |
| Roofing | $  162 | $    0 |
| Interior Trim/Doors | $3,515 | $   27 |
| Hardwood Floors | $  705 | $  705 |
| Cabinets | $  450 | $    0 |

| EXHIBIT I PAGE 7 | | |
|---|---|---|
| **Description** | **Amount Claimed** | **Amount Disallowed** |
| Clean up | $   140 | $     0 |
| Hardwood Floors | $3,360 | $1,493 |
| Set Bifold Doors & Misc. | $2,100 | $     0 |

    Based on these determinations, I will disallow $7,568 of the $85,448.88 claim. Kopp's secured claim will be allowed in the amount of $77,880.88. Mr. Monson should submit the order.

                            Very truly yours,

                            ELIZABETH L. PERRIS
                            Bankruptcy Judge

cc:  Brian Lynch